IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

FRANCISCO FABARA,

        Plaintiff,

vs.                                                                                          No. CIV 14-1146 JB/KK

GOFIT, LLC,

        Defendant.

## AMENDED MEMORANDUM OPINION AND ORDER[1]

**THIS MATTER** comes before the Court on the Defendant's Motion for Protective Order and Partial Stay of Discovery Pending Resolution of Defendant's Motion to Dismiss for Lack of Personal Jurisdiction, filed March 25, 2015 (Doc. 25)("Motion"). The Court held a hearing on March 31, 2015. The primary issue is whether the Court will stay discovery until it rules on Defendant GoFit, LLC's Motion to Dismiss for Lack of Personal Jurisdiction, filed March 17, 2015 (Doc. 21)("MTD"). Because GoFit, LLC has not shown that Plaintiff Francisco Fabara's discovery requests are particularly onerous, and because it is unlikely that there will be duplicitous discovery even if the Court grants the MTD, the Court will deny the Motion.

## FACTUAL BACKGROUND

The Court takes its facts from the Complaint for Damages for Injury, filed December 19, 2014 (Doc. 1-1)("Complaint"). At some point before April 26, 2014, Fabara purchased, for his

---

[1]The Memorandum Opinion and Order, filed May 5, 2015 (Doc. 42)("MOO"), included a Law Regarding section entitled "Law Regarding Rule 12(b)(1)," which set forth the relevant law for motions to dismiss for lack of subject-matter jurisdiction. MOO at 8-10. Because Defendant GoFit, LLC filed a motion to dismiss for lack of personal jurisdiction rather than a motion to dismiss for lack of subject-matter jurisdiction, the relevant Law Regarding section should have set forth the relevant law under rule 12(b)(2). This Amended Memorandum Opinion and Order corrects the Court's error while leaving the remainder of the MOO -- including the holding -- intact.

personal home use, a sixty-five centimeter Ultimate Core Stability Ball (the "Exercise Ball") that GoFit, LLC manufactures. Complaint ¶¶ 4-5, at 1-2.[2]  On April 26, 2014, Fabara was using the Exercise Ball in the course of his exercise routine, and, suddenly and without warning, the Exercise Ball exploded and deflated, causing Fabara to tumble to the floor and injuring his forearm, wrist, shoulders, and back.  See Complaint ¶¶ 6-8, at 2.  Before the Exercise Ball exploded, Fabara was using it according to its labeling and instructions, and in the same manner in which Fabara had previously used it.  See Complaint ¶ 7, at 2.  Because of the explosion, Fabara suffered personal injuries, which (i) have required, and may in the future continue to require, medical, surgical and related treatment; (ii) have resulted, and in the future will continue to result, in physical and emotional pain and suffering; (iii) have resulted, and may in the future continue to result, in lost earnings; and (iv) have resulted in disfigurement.  See Complaint ¶ 9, at 2.

## PROCEDURAL BACKGROUND

On November 11, 2014, Fabara filed suit in the First Judicial District Court, County of Santa Fe, New Mexico.  See Complaint at 1.  About a month later, on December 19, 2014, GoFit, LLC removed the case to federal court, asserting diversity jurisdiction.  See Notice of Removal, filed December 19, 2014 (Doc. 1).  Fabara brings three causes of action against GoFit, LLC: (i) strict product liability, see Complaint ¶¶ 10-13, at 2 (Count I); (ii) breach of implied warranty, see Complaint ¶¶ 14-17, at 3 (Count II); and (iii) negligence, see Complaint ¶¶ 18-21, at 3 (Count III).  Fabara asks the Court for judgment against GoFit, LLC "for compensatory damages in a reasonable amount for the physical, emotion and financial harm suffered by plaintiff, for pre-judgment and post-judgment interest, and for taxable costs."  Complaint at 4.

---

[2]The Court will use the Complaint's internal pagination -- i.e., the numbers in the middle and on the bottom of each page -- rather than CM/ECF's.

GoFit, LLC filed the MTD on March 17, 2015. In the MTD, GoFit, LLC asserts that the Court does not have personal jurisdiction over GoFit, LLC, because: (i) Fabara bought the Exercise Ball outside of New Mexico; (ii) GoFit, LLC's primary place of business is in Oklahoma; and (iii) GoFit, LLC is not registered to do business in New Mexico, owns no buildings or land in New Mexico, has no employees or agents in New Mexico, has no telephone listings or bank accounts in New Mexico, and does not direct any advertising specifically to New Mexico. See MTD at 1-2. Fabara was also scheduled to depose Charles Caswell, GoFit, LLC's Chief Executive Officer, and Richard Davis, GoFit, LLC's President, on April 1, 2015. See Motion at 1.

### 1. The Motion.

GoFit, LLC filed the Motion on March 25, 2015. In the Motion, GoFit, LLC asks the Court to stay all discovery unrelated to personal jurisdiction until the Court rules on the MTD. See Motion at 2. GoFit, LLC explains that the Court "'may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.'" Motion at 2 (quoting Fed. R. Civ. P. 26(c)). According to GoFit, LLC, courts have held that good cause to stay discovery exists when the resolution of a preliminary motion may dispose of the entire action. See Motion at 2 (citing Nankivil v. Lockheed Martin Corp., 216 F.R.D. 689, 692 (M.D. Fla. 2003)). GoFit, LLC points out that the Court's personal jurisdiction over it remains unresolved. See Motion at 3. GoFit, LLC warns that, if it is subjected to unlimited discovery and the Court later grants the MTD, GoFit, LLC "would have engaged in unnecessary discovery and would be subjected to the undue burden and expense of duplicate discovery if there were any subsequent suits." Motion at 3. See id. at 2 (citing Sallie v. Spanish Basketball Fed'n, No. CIV 12-1095 REB/KMT, 2013 WL 5253028, at *2 (D. Colo. 2013);

String Cheese Incident, LLC v. Stylus Shows, Inc., No. CIV 02-1934 LTB/PA, 2006 WL 894955, at *2 (D. Colo. Mar. 30, 2006)). GoFit, LLC contends that limiting the scope of discovery to personal jurisdiction while the MTD is pending affords Fabara "the opportunity to develop any necessary evidence" while simultaneously protecting GoFit, LLC from undue burden and expense. Motion at 3.

### 2. The March 31, 2015, Hearing.[3]

The Court held a hearing on March 31, 2015. See Transcript of Hearing (taken March 31, 2015)("Tr.").[4] At the hearing, Fabara argued that he did not expect the Court to grant the MTD and that, even if the Court grants it, Fabara could refile this case in Oklahoma, and could use the transcripts from Caswell's and Davis' depositions in that case. See Tr. at 11:14-12:1 (Segel). GoFit, LLC said that it was concerned that, if the Court allows Fabara to conduct full discovery and ultimately grants the MTD, it would have to undergo another round of discovery in the subsequent case, potentially with additional parties and new attorneys. See Tr. at 13:8-14:1 (Collins); id. at 19:15-22 (Segel). GoFit, LLC added:

> I think today when we learn that the deadline to join and amend[] parties i[s] April 30, the same date the hearing is set on our pending motion to dismiss, I think that shows the circumstances of the case can change either we could file to add a distributor or a manufacturer, the plaintiff can file to change, that would change the contours of the case and the contours of discovery in the same way that success on a motion to dismiss would refilling or transfer to Oklahoma would.

Tr. at 14:4-14 (Collins).

---

[3]Because the parties agreed to have the Court resolve the Motion during the March 31, 2015, hearing, Fabara did not file a response to the Motion and GoFit, LLC did not file a reply.

[4]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version. Any final version may have slightly different page and/or line numbers.

The Court asked Fabara if he would agree that the Court does not have general personal jurisdiction over GoFit, LLC.  See Tr. at 16:21-17:1 (Court).  Fabara replied that it was difficult to answer that question, because he does not remember where he purchased the Exercise Ball.  See Tr. at 17:2-5 (Segel).  The Court asked Fabara if it is possible that the parties would never know where Fabara purchased the Exercise Ball; Fabara said:

> I've asked my client about that on more than one occasion and so far we haven't come up with a definitive answer[.]  [I]f in fact it turns out to be a tie and the tie goes to the defense on that issue, then I agree with Your Honor at that point it would become a general jurisdiction question rather than a specific jurisdiction question and in our brief in response to the [MTD], we will submit some evidence indicating that this defendant does have regular systematic ties and not random, fortuitous or attenuated ties with New Mexico.  Its markets its products nationwide and worldwide and they are marketed widely in New Mexico by a variety of New Mexico retailers.  So I think that there is little question that general jurisdiction would exist if it seems to be difficult or impossible for us to establish specific jurisdiction.

Tr. at 17:18-18:9 (Segel).

When asked by the Court, Fabara clarified that he was not planning on adding any parties to the case.  See Tr. at 18:10-25 (Court, Segel).  The Court asked Fabara if he would be willing to offer assurances that, if the Court grants the MTD, he would not ask to depose Caswell and Davis a second time simply because he filed a new case in Oklahoma, and "if [he] need[s] to depose them again, [he]'ll justify it just like [he] would in New Mexico if [he] wanted to depose them again."  Tr. at 21:1-5 (Court).  Fabara agreed to the Court's proposal.  See Tr. at 21:8-10 (Segel).  The Court explained that it had a number of cases, which set forth the relevant standards in those situations.  See Tr. at 22:13-24 (Court).  The Court said that, with Fabara's assurances, it would deny the Motion, because defendants in civil cases often face an uphill battle in obtaining a discovery stay just because there is a pending motion to dismiss, and the Court found no sound reason to order one at this point.  See Tr. at 24:4-25:9 (Court).

## LAW REGARDING STAYING DISCOVERY

A court has broad discretion in managing its docket, which includes decisions regarding issuing stays for all or part of a proceeding. See Clinton v. Jones, 520 U.S. 681, 706 (1997)("The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket." (citing Landis v. N. Am. Co., 299 U.S. 248, 254 (1936)).

> [T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.

Landis v. N. Am. Co., 299 U.S. at 254-55. Recognizing that district courts must exercise moderation in issuing stays, the Supreme Court of the United States has noted that there are no strict rules for the district court to apply, because "[s]uch a formula . . . is too mechanical and narrow." Landis v. N. Am. Co., 299 U.S. at 255.

"The party seeking a stay generally faces a difficult burden." SWEPI, LP v. Mora Cnty, No. CIV 14-0035 JB/SCY, 2014 WL 7474084, at *15 (D.N.M. Dec. 19, 2014)(Browning, J.)(citing Clinton v. Jones, 520 U.S. at 708 ("The proponent of a stay bears the burden of establishing its need.")). "In particular, where a movant seeks relief that would delay court proceedings by other litigants he must make a strong showing of necessity because the relief would severely affect the rights of others." Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc., 713 F.2d at 1484. "The underlying principle clearly is that 'the right to proceed in court should not be denied except under the most extreme circumstances.'" Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc., 713 F.2d at 1484 (alterations omitted)(quoting Klein v. Adams & Peck, 436 F.2d 337, 339 (2d Cir. 1971)).

The United States Court of Appeals for the Tenth Circuit has acknowledged a district court's discretion in issuing discovery stays. In Cole v. Ruidoso Municipal Schools, 43 F.3d 1373 (10th Cir. 1994), the defendants argued "that they had an absolute right to a stay of discovery" after they filed a motion for qualified immunity and appealed to the Tenth Circuit because the district court imposed conditions on the stay. 43 F.3d at 1386. The Tenth Circuit rebuffed the strict rules that the defendants suggested:

> As a general rule, discovery rulings are within the broad discretion of the trial court. The trial court's decision on discovery matters will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances.

Cole v. Ruidoso Mun. Sch., 43 F.3d at 1386 (citations omitted)(internal quotation marks omitted).

Whether to issue a discovery stay depends greatly on the facts and progress in each case. In S2 Automation, LLC v. Micron Technology, Inc., the Court granted in part and denied in part a motion to stay discovery, to extend pretrial deadlines, to vacate the trial setting, and to issue a protective order. See 2012 WL 3150412, at *1. The Court denied the motion to the extent it requested a discovery stay, because, "[u]ltimately, a stay is unnecessary." S2 Automation, LLC v. Micron Tech., Inc., 2012 WL 3150412, at *3. The parties had made "significant progress on the disputed matters," and the Court had "issued rulings on many of the motions that Micron Technology contended needed to be resolved before the case proceeded." S2 Automation, LLC v. Micron Tech., Inc., 2012 WL 3150412, at *3. Instead of granting the discovery stay, the Court extended deadlines that it had previously set in the case based on the case's increasing complexity. See S2 Automation, LLC v. Micron Tech., Inc., 2012 WL 3150412, at *3. In Walker v. THI of New Mexico at Hobbs Center, No. CIV 09-0060 JB/KBM, 2011 WL

2728326 (D.N.M. June 28, 2011)(Browning, J.), the Court evaluated whether to stay deposition discovery until thirty days after it ruled on the motions to dismiss two of the defendants, which would determine whether those defendants would remain in the suit and participate in discovery. See 2011 WL 2728326, at *1. The plaintiffs argued that the Court had already extended discovery deadlines and that issuing a stay would require rescheduling deadlines. See Walker v. THI of N.M. at Hobbs Ctr., 2011 WL 2728326, at *1. The Court denied the motion to stay, because it did "not see a benefit to staying discovery." Walker v. THI of N.M. at Hobbs Ctr., 2011 WL 2728326, at *2. The Court noted that counsel for the two defendants who were subject to the motions to dismiss had already indicated that they would not participate in deposition discovery. See Walker v. THI of N.M. at Hobbs Ctr., 2011 WL 2728326, at *2. "There is thus no benefit to staying deposition discovery, and staying deposition discovery would further delay the case." Walker v. THI of N.M. at Hobbs Ctr., 2011 WL 2728326, at *2.

## STANDARD FOR DETERMINING RULE 12(b)(2) MOTIONS

Motions to dismiss under rule 12(b)(2) of the Federal Rules of Civil Procedure test the plaintiff's theory of personal jurisdiction as well as the facts supporting personal jurisdiction. See Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 153-54 (2d Cir. 1999). Rule 12(b)(2) concerns lack of personal jurisdiction. See Fed. R. Civ. P. 12(b)(2). In determining personal jurisdiction, a court must test not only the complaint's jurisdictional theory, but also the facts on which jurisdiction is predicated. See Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d at 154 (holding that the court "must determine whether the defendant in fact subjected itself to the court's jurisdiction"). Where a defendant raises a timely challenge contesting personal jurisdiction, the plaintiff bears the burden of establishing that there is personal jurisdiction over the defendant and that the exercise of personal jurisdiction would not violate due-process

requirements. See Overton v. United States, 925 F.2d 1282, 1283 (10th Cir. 1991); Rambo v. Am. S. Ins. Co., 839 F.2d 1415, 1417 (10th Cir. 1988); Jemez Agency, Inc. v. CIGNA Corp., 866 F. Supp. 1340, 1342 (D.N.M. 1994)(Burciaga, J). At this stage of the proceedings, it is not for the court to resolve disputed facts. See Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 45 (1st Cir. 2002). Rather, the court "'must accept the plaintiff's (properly documented) evidentiary proffers as true for the purpose of determining the adequacy of the prima facie jurisdictional showing.'" Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d at 45 (quoting Foster-Miller, Inc. v. Babcock & Wilcox Can., 46 F.3d 138, 145 (1st Cir. 1995)).

## LAW REGARDING PERSONAL JURISDICTION

The plaintiff has the burden of proving personal jurisdiction. The court's jurisdiction may rest on specific or general personal jurisdiction. Due process, however, limits any state statutory basis of personal jurisdiction.

### 1. Burden of Proof.

"[W]hen the court's jurisdiction is contested, the plaintiff has the burden of proving jurisdiction exists." Wenz v. Memery Crystal, 55 F.3d 1503, 1505 (10th Cir. 1995).

> When jurisdiction is "decided on the basis of affidavits and other written materials, the plaintiff need only make a prima facie showing" of facts that would support the assertion of jurisdiction. [Wenz v. Memery Crystal, 55 F.3d at 1505]. "The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavit." Behagen v. Amateur Basketball Ass'n, 744 F.2d at 733. When, however, a defendant presents credible evidence through affidavits or other materials suggesting the lack of personal jurisdiction, the plaintiff must come forward with sufficient evidence to create a genuine dispute of material fact on the issue. See Doe v. Nat'l Med. Servs., 974 F.2d 143, 145 (10th Cir. 1992). Only if the plaintiff meets the obligation of contesting the credible evidence that the defendant presents does the court resolve the factual disputes in favor of the plaintiff. See Wenz v. Memery Crystal, 55 F.3d at 1505; Behagen v. Amateur Basketball Ass'n, 744 F.2d at 733.

Clark v. Meijer, Inc., 376 F.Supp.2d 1077, 1082 (D.N.M. 2004)(Browning, J.).  When, however, "personal jurisdiction is assessed in an evidentiary hearing . . . , the plaintiff generally must establish, by a preponderance of the evidence, that personal jurisdiction exists."  Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d 1063, 1070, n.4 (10th Cir. 2008).  "The party seeking to establish personal jurisdiction over a foreign litigant must make two showings: first, that the exercise of jurisdiction is sanctioned by the state's long-arm statute; and second, that it comports with the due process requirements of the Fourteenth Amendment."  Marcus Food Co. v. DiPanfilo, No. CIV 10-3285, 2011 WL 5084997, at *3 (10th Cir. Oct. 27, 2011).  New Mexico's long-arm "statute extends the jurisdictional reach of New Mexico courts as far as constitutionally permissible."  Tercero v. Roman Catholic Diocese of Norwich, Conn., 132 N.M. 312, 315, 48 P.3d 50, 54 (2002).  Consequently, the Court "need not conduct a statutory analysis apart from the due process analysis."  Marcus Food Co. v. DiPanfilo, 2011 WL 5084997, at *3 (internal quotation marks omitted).

### 2.     General and Specific Jurisdiction.

Depending on the character and extent of a defendant's contacts, a court may exercise specific or general personal jurisdiction.  See Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414 (1984).

> General jurisdiction is based on an out-of-state defendant's "continuous and systematic" contacts with the forum state, and does not require that the claim be related to those contacts.  Specific jurisdiction, on the other hand, is premised on something of a quid pro quo: in exchange for "benefitting" from some purposive conduct directed at the forum state, a party is deemed to consent to the exercise of jurisdiction for claims related to those contacts.

Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d at 1078.  Thus, "[s]uch contacts may give rise to personal jurisdiction over a non-resident defendant either generally, for any lawsuit, or specifically, solely for lawsuits arising out of particular forum-related activities."  Shrader v.

Biddinger, 633 F.3d 1235, 1239 (10th Cir. 2011).

A court may assert specific jurisdiction "if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)(citations omitted)(internal quotation marks omitted). In the tort context, a defendant has "purposefully directed" his activities at New Mexico or its residents when he or she has: (i) taken intentional action; (ii) the action was "expressly aimed" at New Mexico; and (iii) the action was taken with the knowledge that "the brunt of th[e] injury" would be felt in New Mexico. Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d at 1072 (quoting Calder v. Jones, 465 U.S. 783, 789-90 (1984)).

These general principles of personal jurisdiction are modified in cases involving the internet. In these cases, the Tenth Circuit focuses whether the website or internet user "intentionally direct[ed] his/her/its activity or operation at the forum state rather than just having the activity or operation accessible there." Shrader v. Biddinger, 633 F.3d 1235, 1240 (10th Cir. 2011)(emphasis in original). Simply posting defamatory statements on a website will not, standing alone, establish personal jurisdiction over the poster in any state where the post may be read. See 633 F.3d at 1241. Instead, courts consider whether the "defendant deliberately directed its message at an audience in the forum state and intended harm to the plaintiff occurring primarily or particularly in the forum state." 633 F.3d at 1241. In short, "the forum state itself must be the focal point of the tort." 633 F.3d at 1244 (emphasis in original)(quoting Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d at 1074 n.9)(internal quotation marks omitted).

### 3.      Due Process and Personal Jurisdiction.

> The due process analysis is also two-fold:  First, [the defendant] must have "minimum contacts" with the forum state, demonstrating that he "purposefully availed" himself of the protections or benefits of the state's laws and "should reasonably anticipate being haled into court there."  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473-76 . . . (1985); see also Emp'rs Mut. Cas. Co., 618 F.3d at 1159-60 (reiterating the Burger King standard).  Although agreements alone are likely to be insufficient to establish minimum contacts, "'parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for the consequences of their activities.'"  TH Agric. & Nutrition, LLC v. Ace Eur. Grp. Ltd., 488 F.3d 1282, 1287-88 (10th Cir. 2007)(quoting Burger King, 471 U.S. at 473, 478 . . . .

Marcus Food Co. v. DiPanfilo, 2011 WL 5084997, at *4.

> A defendant may reasonably anticipate being subject to suit in the forum state "if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities."  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 . . . (1985)(internal citation omitted); see also Hanson v. Denckla, 357 U.S. 235, 253 . . . (1958)("[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State.").

TH Agric. & Nutrition, LLC v. Ace Eur. Grp. Ltd., 488 F.3d at 1287-88.  The Supreme Court of the United States has held that the mere foreseeability of harm occurring in a particular forum will not support a finding of minimum contacts.  See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 295 (1980)(holding that, although "an automobile is mobile by its very design and purpose," thus indicating that it is foreseeable that a particular automobile may cause injury in a forum state, "'foreseeability' alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause").  In Roberts v. Piper Aircraft Corp., 100 N.M. 363, 670 P.2d 974 (Ct. App. 1983), the Court of Appeals of New Mexico similarly rejected the argument that foreseeability could establish minimum contacts, and found no personal jurisdiction or minimum contacts in the following circumstances:

> [T]he record is devoid of any contact between Scenic Aviation and New Mexico. Scenic Aviation is a fixed-base operator selling aviation fuel in Las Vegas, Nevada. There is no evidence that Scenic Aviation advertises in New Mexico, or sells fuel to New Mexico residents. Without "contacts, ties, or relations" with New Mexico the fact that fuel sold by Scenic Aviation found its way into our state does not support a valid exercise of personal jurisdiction.

100 N.M. at 367, 670 P. 2d at 948. "[T]he foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. at 297. As Tenth Circuit has further explained, because "mere foreseeability" is not sufficient to establish minimum contacts, a plaintiff "must establish . . . not only that defendants foresaw (or knew) that the effects of their conduct would be felt in the forum state, but also that defendants undertook intentional actions that were expressly aimed at that forum state." Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d at 1077.

Similarly, to find general jurisdiction over a defendant, contacts must be "continuous and systematic" -- therefore, "[s]imply because a defendant has a contractual relationship and business dealings with a person or entity in the forum state does not subject him to general jurisdiction there"; "correspondence with a forum resident does not support general jurisdiction;" and "sporadic or isolated visits to the forum state will not subject the defendant to general jurisdiction" because a "[defendant's] lack of a regular place of business in [the forum state] is significant, and is not overcome by a few visits." Shrader v. Biddinger, 633 F.3d at 1247. "[G]eneral jurisdiction over a web site that has no intrinsic connection with a forum state requires commercial activity carried on with forum residents in such a sustained manner that it is tantamount to actual physical presence within the state." Shrader v. Biddinger, 633 F.3d at 1246. When analyzing minimum contacts sufficient for general jurisdiction in regard to the operation

of a web site, the Tenth Circuit has referred to, without adopting, a "sliding scale" framework.

Shrader v. Biddinger, 633 F.3d at 1242 n.5.

> At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

633 F.3d 1242 n.5 (internal quotation marks omitted).

> If [the defendant] is found to have the requisite minimum contacts with [the forum state], then we proceed to the second step in the due process analysis: ensuring that the exercise of jurisdiction over him "does not offend 'traditional notions of fair play and substantial justice.'" See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 . . . (1980)(quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 . . . (1945)). [The defendant] bears the burden at this stage to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." See Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d 1063, 1080 (10th Cir. 2008). We consider the following five factors, . . . in deciding whether the exercise of jurisdiction would be fair:
>
>> (1) the burden on the defendant, (2) the forum state's interests in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effectual relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states or foreign nations in furthering fundamental social policies.
>
> Id. (brackets omitted); see also OMI Holdings, Inc., 149 F.3d at 1095 (applying these factors in a case involving a Canadian corporation). "[T]he reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing on minimum contacts, the less a defendant need show in terms of unreasonableness to defeat jurisdiction." TH Agric. & Nutrition, LLC, 488 F.3d at 1292 (internal quotation marks and brackets omitted).

Marcus Food Co. v. DiPanfilo, 2011 WL 5084997, at *4-5.

In Silver v. Brown, the Court considered whether it had personal jurisdiction over defendants who allegedly slandered, defamed, and caused the plaintiff -- Michael Silver -- duress, by posting a blog on the internet that portrayed him in a negative light.  See Silver v. Brown, 678 F. Supp. 2d 1187, 1204 (D.N.M. 2009)(Browning, J.), aff'd in part and rev'd in part, 382 F. App'x 723 (10th Cir. 2010).  The Court determined that it did not have personal jurisdiction over defendant Jack McMullen, because Silver failed to demonstrate that McMullen "was significantly associated with the blog or controlled it in any way."  678 F. Supp. 2d at 727.  The Court also concluded that it did not have personal jurisdiction over the blog post's author -- Matthew Brown -- because he is not domiciled in New Mexico, has not traveled to New Mexico, and does not transact business there.  See 678 F. Supp. 2d at 1211.  The Court said that Brown's blog posts similarly do not establish personal jurisdiction, because

> the blog is closer to an informative website than a commercial website.  No services are offered, and Brown is not collecting revenue from the website. Brown does not interact with the people who post information on the blog. Brown, to the Court's knowledge, did not solicit negative postings on the website. Further, even though people in New Mexico can view the website, the blog is not a website that is directed solely at the people of New Mexico.  The number of people who can access the website in New Mexico in comparison to those who are able to access the website throughout the world, or even in the United States, according to the statistics that Silver provided at the hearing, is nominal.

678 F. Supp. 2d at 1211-12.

On appeal, the Tenth Circuit affirmed the Court's holding as to McMullen, but reversed its decision as to Brown.  See Silver v. Brown, 382 F. App'x at 727-32.  In an opinion that the Honorable Monrow G. McKay, United States Circuit Judge for the Tenth Circuit, authored, and Judges Broby and Ebel joined, the Tenth Circuit applied the three-part test from Calder v. Jones to conclude that the Court had personal jurisdiction over Brown.  See Silver v. Brown, 382 F. App'x at 727-32.

Judge McKay explained that, first, the posting of the blog was "clearly an intentional act" designed to damage the plaintiff's reputation.  See 382 F. App'x at 729.  Second, Judge McKay said that Brown had "expressly aimed his blog at New Mexico, where the Silver, his business, and the majority of his customers were located.  See 382 F. App'x at 729.  Judge McKay said: "It was about a New Mexico resident and a New Mexico company.  The blog complained of Mr. Silver's and [his business'] actions in the failed business deal.  Those actions occurred mainly in New Mexico."  See 382 F. App'x at 729-30.  Third, Judge McKay explained that Brown knew Silver would suffer the brunt of his injury in New Mexico, as the state was "unquestionably the center of his business activities."  See 382 F. App'x at 730.

### 4. New Mexico's Long-Arm Statute.

New Mexico's long-arm statute provides, in relevant part, that its courts may exercise personal jurisdiction over a party "whether or not a citizen or resident of this state . . . as to any cause of action arising from: (1) the transaction of business within this state . . . [or] (3) the commission of a tortious act within this state . . . ."  N.M. Stat. Ann. § 38-1-16.  For New Mexico courts

> to exercise personal jurisdiction over nonresident, out-of-state defendants, the following three-part test must be satisfied:
>
> (1) the defendant's act must be one of the five enumerated in the long-arm statute; (2) the plaintiff's cause of action must arise from the act; and (3) minimum contacts sufficient to satisfy due process must be established by the defendant's act.

State Farm Mut. Ins. Co. v. Conyers, 109 N.M. 243, 244, 784 P.2d 986, 987 (1989)(citing Salas v. Homestake Enterprises, Inc., 106 N.M. 344, 345, 742 P.2d 1049, 1050 (1987)).  The first and third step of this test have been "repeatedly equated" with the due process standard of "minimum contacts."

F.D.K. v. Hiatt, 117 N.M. 461, 463, 872 P.2d 879, 881 (1994).  "When negligent acts occur outside New Mexico which cause injury within the state, a 'tortious act' has been committed for

purposes of the long-arm statute." Tercero v. Roman Catholic Diocese of Norwich, Conn., 132 N.M. at 319, 48 P.3d at 57.  "As with the transaction of business analysis, rather than engage in a technical analysis of whether the defendant committed a tortious act, we must equate the 'tortious act' which the defendant is alleged to have committed with minimum contacts to determine if due process has been satisfied."  132 N.M. at 319, 48 P.3d at 57 (alteration omitted)(internal quotation marks omitted).

## ANALYSIS

The Court will deny the Motion.  A party seeking a stay "must make a strong showing of necessity because the relief would severely affect the rights of others."  Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc., 713 F.2d at 1484.  "The underlying principle clearly is that '[t]he right to proceed in court should not be denied except under the most extreme circumstances.'"  Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc., 713 F.2d at 1484 (quoting Klein v. Adams & Peck, 436 F.2d 337, 339 (2d Cir. 1971)).  GoFit, LLC has made no such showing here.  Even if the Court grants the MTD and Fabara has to refile this case in Oklahoma, he will likely have all that he needs from Caswell and Davis from the depositions that he has already taken from them in this case.  If Fabara requests a second set of depositions from Caswell and Davis, he has given the Court his assurances that he will justify a second round of depositions in that case as if he were still before the Court trying to take that second set.

Defendants in civil cases face an uphill battle in putting the brakes on discovery.  Particularly in cases like this one, where there are a relatively small number of factual issues, the plaintiff's discovery requests are not particularly burdensome, and the defendant has not shown how it will suffer prejudice from them, the Court is reluctant to enter a protective order or stay of

discovery.  GoFit, LLC has not shown how the discovery here is burdensome, is unnecessary in this case, or will be unhelpful in a future case in Oklahoma.  Accordingly, the Court will deny the Motion.

**IT IS ORDERED** that the Defendant's Motion for Protective Order and Partial Stay of Discovery Pending Resolution of Defendant's Motion to Dismiss for Lack of Personal Jurisdiction, filed March 25, 2015 (Doc. 25), is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Ronald Segel
Will Ferguson & Associates
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Joshua A. Collins
Christopher R. Reed
Allen, Shepherd, Lewis, Syra & Chapman, P.A.
Albuquerque, New Mexico

    *Attorneys for the Defendant*